UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MALIK WOODHOUSE,

Plaintiff,

- against -

ANDREW M. SAUL, Commissioner of Social Security,

Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-5921 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Malik Woodhouse brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Social Security Administration's ("SSA") denial of his claim for Supplemental Security Income ("SSI"). The parties have cross-moved for judgment on the pleadings. (Dkts. 12, 13.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings, denies the Commissioner's cross-motion, and remands the case for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

### I. Procedural History

On June 23, 2016, Plaintiff filed an application for SSI. (Tr.[1] 13, 65.) The claim was initially denied on September 26, 2016. (Tr. 13, 86.) Upon the initial denial of his claim, Plaintiff requested a hearing on September 26, 2016, and appeared for a hearing before an administrative law judge ("ALJ") on September 4, 2018. (Tr. 13, 92.) By decision dated October 3, 2018, ALJ M. Reeves found that Plaintiff was not disabled within the meaning of the Social Security Act, and

[1] All references to "Tr." refer to the consecutively paginated Administrative Transcript. (Dkt. 10.)

had not been so since the date of his application. (Tr. 10–22.) On December 5, 2018, Plaintiff requested a review of the ALJ's decision (Tr. 223–25), which the Appeals Council denied on September 12, 2019 (Tr. 1–4). Based upon this denial, Plaintiff timely[2] filed this action seeking reversal or remand of ALJ Reeves's October 3, 2018 decision. (*See generally* Complaint, Dkt. 1.)

## II. The ALJ's Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted). First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If the answer is yes, the plaintiff is not disabled. *Id.* If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment. *Id.* § 416.920(a)(4)(ii). An impairment is severe when it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." *Id.* § 416.922(a). If the plaintiff does not suffer from an impairment or combination of impairments that is severe, then the plaintiff is not disabled. *Id.* § 416.920(a)(4)(ii). But if the plaintiff does suffer from an impairment or

---

[2] Section 405(g) provides that

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing, *inter alia*, 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on September 17, 2019. Because Plaintiff filed the instant action on October 21, 2019—34 days later—it is timely. (*See generally* Complaint, Dkt. 1.)

combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether it meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). *Id.* § 416.920(a)(4)(iii); *see also id.* pt. 404, subpt. P, app. 1. If the ALJ determines at step three that the plaintiff has one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act. *Id.* § 416.920(a)(4)(iii). On the other hand, if the plaintiff does not have a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing on to steps four and five. To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 416.945(a)(1). The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work. *Id.* § 416.920(a)(4)(iv). If the answer is yes, the plaintiff is not disabled. *Id.* Otherwise, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 416.920(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits. *Id.*

Here, the ALJ found that Plaintiff "ha[d] not engaged in substantial gainful activity since June 23, 2016, the application date." (Tr. 15.) The ALJ also found that Plaintiff had the following severe impairments: sleep apnea, autism spectrum disorder, and obesity. (*Id.*) At the third step, the ALJ determined that none of Plaintiff's impairments met or medically equaled the severity of any of the impairments in the Listings. (Tr. 15–17.) The ALJ accordingly proceeded to determine Plaintiff's RFC and found that Plaintiff maintained the RFC to perform

> light work[3] as defined in 20 CFR 416.967(b) except [Plaintiff] can have occasional interaction with co-workers and supervisors, but no interaction with the general public. [Plaintiff] can perform simple, short, routine tasks and understand short, simple routine directions.

(Tr. 17.) The ALJ also found that Plaintiff had "no past relevant work." (Tr. 21.) At the last step, the ALJ relied on testimony by a vocational expert to determine that Plaintiff, who was 24 years-old at the time of his application and had a high-school education, was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 22.) The ALJ accordingly concluded that Plaintiff was not disabled under the Social Security Act, and not entitled to SSI. (*Id.*)

**STANDARD OF REVIEW**

Under the Social Security Act, a plaintiff may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3) (making § 405(g) applicable to SSI claims). A district court reviewing a final decision of the Commissioner must determine "if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (per curiam) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). "Substantial evidence" is "more than a mere

---

[3] According to the applicable regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a plaintiff] must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b).

scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (internal quotation and alterations omitted); *see also Cichocki*, 729 F.3d at 178 n.3 ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the court] to glean the rationale of an ALJ's decision[.]" (internal quotation omitted)). If there is substantial evidence in the record to support the Commissioner's factual findings, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki*, 729 F.3d at 175–76. Indeed, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted). But even if substantial evidence supports the Commissioner's findings, a court may not affirm "where an error of law has been made that might have affected the disposition of the case[.]" *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). "[L]egal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

**DISCUSSION**

Plaintiff argues that the ALJ committed legal error in determining Plaintiff's residual functional capacity ("RFC") because the ALJ failed to consider all of Plaintiff's impairments and improperly assessed the medical opinion evidence in the record. (Dkt. 11, at 11–19.) For the reasons stated below, the Court concludes that there are "inadequacies in the ALJ's analysis [that] frustrate meaningful review" and prevent the Court from concluding that substantial evidence supports the ALJ's RFC determination, and thus, remand is necessary. *See Cichocki*, 729 F.3d at 177.

First, the Court agrees that the ALJ's determination of Plaintiff's RFC is deficient because it does not appear to consider the limitations of all of Plaintiff's impairments. As the ALJ acknowledged, SSA regulations require the ALJ to "consider all of the claimant's impairments, including impairments that are not severe," when making an RFC finding. (Tr. 14 (citing 20 C.F.R. §§ 416.920(e), 416.945; SSR 96-8p)); *see also* 20 C.F.R. § 416.945(e) ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."); *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995) ("[A]s this court has long recognized, the combined effect of a claimant's impairments must be considered in determining disability; the SSA must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe." (collecting cases)). The ALJ moreover found that Plaintiff suffered from "severe" impairments of "sleep apnea, autism spectrum disorder, and obesity." (Tr. 15.) Because the ALJ determined that these impairments did not meet or medically equal any of the impairments in the Listings, the ALJ proceeded to find that Plaintiff had the RFC "to perform light work as defined in 20 CFR 416.967(b)," except that Plaintiff could have only "occasional interaction with co-workers and supervisors" and "no interaction with the general public." (Tr. 17.) The ALJ also found that Plaintiff could "perform simple, short, routine tasks and understand short, simple routine directions." (Tr. 17.)

There is, however, no indication that this RFC finding takes into consideration the limitations imposed by Plaintiff's sleep apnea and obesity, including the symptoms of fatigue and falling asleep during the day to which Plaintiff testified at the hearing (Tr. 45–46) and which are corroborated by the medical evidence (Tr. 514, 544, 617). Indeed, in arriving at Plaintiff's RFC, the ALJ simply explained:

> In sum, although the claimant does have functional limitations because of his mental impairments, they are not to the degree as alleged and are fully

> accommodated by the within residual functional capacity. Looking at the claimant's allegations in the light most favorable to him, but in conjunction with the medical evidence available, the claimant is found to have a residual functional capacity at a less than light exertional level with the non-exertional limitations in the within residual functional capacity. In limiting the claimant to no more than occasional interaction with co-workers and supervisors, no contact with the general public, and short, simple, routine tasks, I have accounted for his reported symptoms.

(Tr. 21.) As this explanation confirms, the ALJ considered the limitations of Plaintiff's "mental impairments," *i.e.*, his autism spectrum disorder, but there is no explanation of how, if at all, the ALJ accounted for the limitations imposed by Plaintiff's sleep apnea and obesity. (*See id.*) The Court acknowledges that the ALJ did briefly discuss Plaintiff's sleep apnea and obesity in summarizing Plaintiff's medical history. (Tr. 18.) Specifically, the ALJ noted that Plaintiff experiences "daytime sleepiness secondary to lack of good quality sleep" and observed that Plaintiff "underwent a sleep study," which indicated that Plaintiff should "begin using a CPAP at home." (*Id.*) The ALJ also found it "reasonable to believe that [Plaintiff]'s obesity contributes to the disabling effects of the other impairments established by the record and discussed in this decision, including [Plaintiff]'s sleep apnea." (*Id.*) Nonetheless, the ALJ's decision provides no actual explanation of how Plaintiff's sleep apnea and obesity—and associated symptoms of sleepiness and fatigue—were factored, if they were, into Plaintiff's RFC. Instead, after briefly remarking on Plaintiff's sleep apnea and obesity, the ALJ's decision proceeds to discuss Plaintiff's autism spectrum disorder extensively (*see* Tr. 18–21), and, as already noted, the ultimate explanation of Plaintiff's RFC references only "functional limitations because of his mental impairments" (Tr. 21). It is not incumbent upon this Court to attempt to discern the reasoning behind the ALJ's conclusion. Rather, the ALJ must provide "an accurate and logical bridge from the evidence to her conclusion." *See Collins v. Berryhill*, No. 16-CV-6673 (PKC), 2018 WL 259282 at *7 (E.D.N.Y. Jan. 2, 2018) (quoting *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (summary order)). The ALJ failed to do so here. Moreover, even if the ALJ considered

Plaintiff's impairments separately, the ALJ still erred by not considering all of Plaintiff's impairments in combination. *See Dixon*, 54 F.3d at 1031; *see also Thompson v. Astrue*, 416 F. App'x 96, 97 (2d Cir. 2011) (summary order) (vacating and remanding because the ALJ merely "examined [the plaintiff]'s mental and physical impairments separately, and failed to evaluate all of the impairments together," which "was erroneous as a matter of law").

Second, the Court cannot find that the ALJ properly followed SSA regulations in assessing the medical opinions in the record. Because Plaintiff filed his claim for SSI on June 23, 2016 (Tr. 65), before the SSA's new regulations took effect on March 27, 2017, the treating physician rule applies in this case, *see* 20 C.F.R. §§ 416.920c, 416.927. Under the treating physician rule, a treating source's medical opinion on the nature and severity of a claimant's impairments will be given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). When a treating source's opinion is not afforded controlling weight, "SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive," and "the ALJ must 'comprehensively set forth [their] reasons for the weight assigned to a treating physician's opinion.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam) (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)); *see also* 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."). As the Second Circuit has said, federal courts "do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (per curiam).

Here, as indicated in the SSA's initial determination of Plaintiff's claim, Dr. Allan R. Santiago is a treating source[4] (Tr. 67), and the medical records show that Plaintiff has had a treatment relationship with Dr. Santiago since at least May 2012 (Tr. 364–616). *See* 20 C.F.R. § 416.927(c)(2) (defining a "treating source" as an "acceptable medical source" who provides, or has provided, the claimant "with medical treatment or evaluation" and with whom the claimant has, or has had, "an ongoing treatment relationship"). The ALJ gave only "some weight" to Dr. Santiago's opinion that Plaintiff "could frequently lift up to forty pounds, stand and walk up to two hours per day and sit less than 6 hours per day." (Tr. 20; *see also* Tr. 623–25.) Yet, the extent of the ALJ's explanation for giving Dr. Santiago's opinion only "some weight" is that "it was based on an examination of [Plaintiff]." (Tr. 20.) In other words, the ALJ did not provide any reason for discounting Dr. Santiago's opinion, much less "good reasons," as required by the SSA's regulations. *See* 20 C.F.R. § 416.927(c)(2); *Greek*, 802 F.3d at 375. This error was not harmless. Dr. Santiago opined that Plaintiff could stand and walk for at most two hours per day (Tr. 623–25), yet as the vocational expert testified at the hearing, all of the jobs that the vocational expert believed Plaintiff could perform given his RFC—ticket marker, garment bagger, and office cleaner—involve "mostly" standing and walking (Tr. 60). This error alone is grounds for remand. *See Greek*, 802 F.3d at 375 ("The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" (quoting *Burgess*, 537 F.3d at 129–30)).

[4] Dr. Allan R. Santiago is a medical doctor specializing in internal medicine and infectious disease. (Tr. 268.)

Additionally, the ALJ did not properly evaluate the opinions of licensed mental health counselor Stewart Sodden, M.S.,[5] and psychiatrist Titus Okunlola, M.D. Mr. Sodden evaluated Plaintiff on at least two occasions—in 2012 and again in 2016. (*See* Tr. 335, 647.) On both occasions, Mr. Sodden administered to Plaintiff the Vineland Adaptive Behavior Scales, Second Edition (Vineland-II), which "assesses adaptive behavior in four domains: Communication, Daily Living Skills, Socialization, and Motor Skills," and "provides a composite score that summarizes the individual's performance across all four domains." (Tr. 338, 650.) In both 2012 and 2016, Plaintiff's composite score indicated that his level of adaptive functioning was "low," and he scored "higher than only less than 1% of similarly aged individuals in the Vineland-II norm sample." (Tr. 338, 650.) Overall, Mr. Sodden both times opined that Plaintiff "requires 24 hour supervision." (Tr. 342, 653.) Similarly, Plaintiff visited Dr. Okunlola on several occasions in 2017, and Dr. Okunlola found Plaintiff to be, among other things, "poorly groomed, well-nourished, bizarre," with an "agitated, uncooperative, [and] withdrawn" attitude. (Tr. 673, 674, 678.) According to Dr. Okunlola, Plaintiff suffers from "developmental disorders" that affect his "social skills" and "interpersonal relationships" and cause "intermittent explosive emotional outburst[s]"—all of which "makes it impossible for [Plaintiff] to be able to function at any job place." (Tr. 669.)

Although the ALJ summarized Mr. Sodden's and Dr. Okunlola's findings in describing Plaintiff's medical history (Tr. 18–20), the ALJ did not indicate or explain what weight, if any, she accorded the opinion of either Dr. Okunlola or Mr. Sodden. (*See* Tr. 20–21.) This omission is especially glaring and consequential, given that the ALJ gave "great weight" to state psychologist

[5] The Court assumes that "M.S." signifies a "Master of Science" degree. *See* https://www.publichealth.columbia.edu/academics/degrees/master-science (last visited Mar. 8, 2021).

Dr. S. Shapiro's opinion that Plaintiff "was able to engage in multi-step tasks, follow basic instructions, navigate the environment, adapt to work place changes, . . . make simple decisions[,] . . . and would do best with independent work." (Tr. 20.) Indeed, the ALJ gave "great weight" to Dr. Shapiro's opinion because it was "generally consistent with the record as a whole"—all while saying nothing about the relevance or impact of Mr. Sodden's opinion that Plaintiff had "low" adaptive functioning and required constant supervision, or Dr. Okunlola's opinion that the effect of Plaintiff's developmental disorders on his social and interpersonal skills "makes it impossible for [Plaintiff] to be able to function at any job place." (*See* Tr. 20–21, 338, 650, 669.) The ALJ was not at liberty to ignore an opinion from a treating source such as Dr. Okunlola. *See Burgin v. Astrue*, 348 F. App'x 646, 648–49 (2d Cir. 2009) (summary order) (holding that the ALJ erred in giving "greater weight" to a state agency medical expert without discussing the inconsistent opinion of a treating source).[6] Nor was the ALJ free to ignore the opinion of a non-medical source such as Mr. Sodden. *See Mitchell v. Colvin*, No. 09-CV-5429 (ENV), 2013 WL 5676289, at *8 (E.D.N.Y. Oct. 17, 2013) ("Although they are not 'acceptable medical sources,' therapists and social workers are 'other sources' whose opinions must be considered by an ALJ." (collecting cases)); *see also* 20 C.F.R. § 416.927(f)(2) (explaining that an adjudicator "generally should explain the weight given to opinions" from medical sources who are not acceptable medical sources and non-medical sources). An ALJ who "simply selectively choose[s] evidence in the record that supports his [or her] conclusions" commits legal error and

[6] Furthermore, if the opinion of the treating physician is not given controlling weight, the ALJ must apply a number of factors to determine the opinion's proper weight. *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). These factors include: (i) the frequency of examination as well as the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating source's opinion; (iii) the extent to which the opinion is consistent with the record as a whole; (iv) whether the treating source is a specialist; and (v) other relevant factors. *See Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *see also* 20 C.F.R. §§ 416.927(c)(2)–(6).

"makes a remand for further proceedings inescapable." *Mitchell*, 2013 WL 5676289, at *9 (internal quotation marks omitted); *see also Gecevic v. Sec'y of Health & Human Servs.*, 882 F. Supp. 278, 285–86 (E.D.N.Y. 1995).

* * *

In sum, "there is a reasonable basis for doubt whether the ALJ applied correct legal principles" in this case, and there is "an unacceptable risk" that Plaintiff has been "deprived of the right to have [his] disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986. Therefore, this case is remanded for further proceedings. *See id.*; *see also Cichocki*, 729 F.3d at 177.

**CONCLUSION**

For the reasons stated above, Plaintiff's motion for judgment on the pleadings is granted, the Commissioner's cross-motion is denied, and the Commissioner's decision is remanded for further consideration consistent with this Memorandum and Order. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 8, 2021
Brooklyn, New York